[Cite as *State v. Baker*, 2024-Ohio-759.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,               :        Case No. 23CA9

    Plaintiff-Appellee,       :

    v.                        :        <u>DECISION AND</u>
                                           <u>JUDGMENT ENTRY</u>

JENNIFER M. BAKER,          :

    Defendant-Appellant.     :        **RELEASED 2/27/2024**

_____

<u>APPEARANCES</u>:

Kate L. Bowling, Bowling Law Office, L.L.C., Dayton, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for appellee.

_____

Hess, J.

**{¶1}** Jennifer M. Baker appeals her conviction following a jury trial of one count of felonious assault. In addition, she forfeited the Remington 870 12-gauge shotgun she used to commit the offense. The charges stem from an incident in which Baker believed her adult daughter's boyfriend, who was not welcome on her property, was driving past her house at 2 a.m. Baker took her shotgun and fired two shots at the vehicle as it travelled along a public road. Baker then called law enforcement and informed them that she had fired shots at her daughter's boyfriend because he had threatened her. However, the driver was not her daughter's boyfriend. Instead Baker had fired at a man who had not threatened Baker in any respect, but was giving a relative a ride home. The shot shattered the vehicle's passenger-side window and blew glass into the vehicle, but did not injure the driver.

{¶2}    Baker contends the trial court erred when it prohibited her from presenting evidence that she was acting in self-defense when she fired her shotgun at a passing vehicle. She argues that she should have been able to introduce evidence about the history between her and her daughter's boyfriend, who she mistakenly believed was driving the vehicle that drove by her house.

{¶3}    Baker also contends that she received ineffective assistance of counsel because her attorney failed to proffer the evidence about the history between herself and her daughter's boyfriend. She argues that because the evidence was related to her burden to produce evidence she acted in self-defense, she was prejudiced because she was unable to assert the defense of self-defense.  Baker also contends her trial counsel was ineffective when he failed to make a Crim.R. 29 motion for an acquittal at the close of the state's case and again at the close of evidence. She argues that the state failed to produce sufficient evidence to support all the elements of felonious assault. Specifically, she contends that an element of the state's case was that she "knowingly cause or attempt to cause serious physical harm" and because she only fired the equivalent of "a spray of 'BBs' on the exterior of the vehicle" at a distance of approximately 30 feet, there was no evidence that she intended to cause physical harm to the driver.

{¶4}    We find that Baker produced insufficient evidence that she was acting in self-defense when she fired shots at a pickup truck on a public roadway as it was traveling past her house. Therefore, evidence of her adult daughter's boyfriend Terry Shanks' alleged prior acts of violence were not relevant and were properly excluded by the trial court. Because the evidence was properly excluded, Baker's attorney's failure to proffer it did not affect the outcome of the proceeding and was not prejudicial. Additionally, we

find that the state produced sufficient evidence that Baker committed felonious assault, therefore her counsel's failure to move for a Crim.R. 29 acquittal would have been futile and was not prejudicial.

{¶5} We overrule Baker's assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶6} The Highland County grand jury indicted Baker on one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, and one count of aggravated assault in violation of R.C. 2903.12(A)(2), a fourth-degree felony. She was also subject to a forfeiture specification for the firearm used in the offenses. Baker pleaded not guilty. Prior to trial, the state filed a motion in limine to exclude any evidence regarding self-defense as it relates to Terry Shanks, arguing that it was not relevant under Evid. R. 401 because (1) Baker fired at a vehicle travelling on a public road and (2) the vehicle fired at was not being driven by Terry Shanks, the person of whom Baker alleged she was fearful. The state also argued that any mistaken identity Baker alleged she had concerning the driver does not have any relevance to her self-defense claim. Baker responded by providing a brief history of her interactions with Terry Shanks and arguing that she had an honest belief that she was in imminent danger of death or grievous bodily injury and the doctrine of transferred intent in self-defense applied because she had mistaken the identity of the driver for that of Shanks. The trial court found that the evidence of the history between Baker and Shanks was not relevant to any issue in the case because Baker did not have reasonable grounds to believe the person in the truck intended to cause her death or great bodily harm:

Driving by a residence and revving the engine of the vehicle on a public roadway does not constitute reasonable grounds to fear death or great bodily harm even if the person had been Terry Shanks. The fear must be based upon the facts and circumstances at the time of the incident, otherwise, people would be permitted to shoot anyone that they claimed had threatened them in the past if they passed them on the street.

The trial court stated that Baker would not be permitted to introduce evidence of self-defense as it relates to her past victimization by Shanks at the trial but she could proffer this evidence to preserve the issue for appeal.

{¶7}   At trial, Highland County Dispatcher Dale Swingley testified that he processes telephone calls from the public. At 2 a.m. on October 28, 2022, Jennifer Baker called in. The recording of the call was played for the jury. In the recording, Baker states, "Terry Shanks just drived [sic] past here and um threaten [sic] me. So, somebody better get down here and help." After Dispatcher Swingley asked for her name and address, he asked for a description of the vehicle. Baker replied, "He was in the pickup truck. I don't know what it is, it's dark, I don't know.  * * * He drove up here revving up his motor, I walked out with a gun and fired a gun at him while he was driving down the road." The telephone recording also captured additional remarks Baker made to someone other than Dispatcher Swingley, which were "Bye. AH. Mother Fucker, I've had enough. Bitch, I've had enough. You dick, (?) [sic] get the fuck out of my life." Dispatcher Swingley testified that in response to Baker's call, he dispatched three deputies to Baker's residence.

{¶8}   Wade Page testified that in the early morning hours of October 28, 2022, he was driving his 1984 Chevy pickup truck with his father-in-law in the front passenger seat. He dropped his father-in-law off at his in-laws' house and then, rather than drive directly home, he took a different route to drive past a place he thought might have a tree cutting job "and I was driving down the road and my windows got blowed out [sic] of my

truck." Page testified that he knew Baker and where she lived. He testified that her house was close to the place he had performed tree cutting services for in the past. He testified that as he drove past Baker's house, he had not stopped his truck, had not revved the engine, and had not yelled anything at her house. Page testified, "* * *I was driving by. I wasn't aggravating, I wasn't even stopping to see her. I was just driving normal." Page testified that he could remember being shot at once and "glass blew over my head and face * * *." The side window glass blew all over his head and the entire window was blown out. Page identified photographs with gunshot damage to the exterior side of his truck, all along the side of the truck, and across the tailgate. Page testified that in response to getting shot at by Baker, he became angry, went home, got his gun, went back to Baker's, fired several shots in the air, and headed back home again. A sheriff's deputy followed Page to his house and arrested him.

{¶9}    Sheriff Deputy Ryan Ross testified that he was dispatched out to Baker's house. Deputy Ross arrived to find shattered glass on the ground and a shotgun shell. Deputy Ross took photographs of the scene that showed the shattered glass and shotgun shell casing. Deputy Ross testified that he took a statement from Baker, who told him, "she said, Terry Shanks has droven by [sic] and she went and got her shotgun and shot at him." At some point later in the morning, Deputy Ross informed Baker that she had shot at Wade Page, not Terry Shanks. Deputy Ross testified that he and two other deputies had been out at Baker's house on a wellness call at about 10 p.m. the day before (four hours prior to the 2 a.m. incident) and visited a camper parked about 50 yards from Baker's house. They were looking for Terry Shanks but Baker's daughter, Stephanie

Stewart, was inside the camper, denied that Shanks was inside, and did not grant them access inside the camper.

{¶10} Deputy Dylan Quenneville testified that he went out to Baker's house at 2 a.m. the morning of the incident. While on his way, he came in contact with Wade Page's pickup and pursued it back to Page's house where he confronted Page. Page's truck had its passenger window busted out and what appeared to be BB marks on the vehicle from its front driver headlights, all the way along the side, and ending along the back tailgate. There was shattered glass in the passenger seat. Deputy Quenneville testified that he is familiar with firearms and buck shot and bird shot ammunition. Both are fired from a gun and they are both used to kill. Deputy Quenneville also testified that he had been out to Baker's house about four hours earlier for a wellness check on Baker's daughter, Stephanie Stewart. However, Stewart, who had a camper on Baker's property, would not permit law enforcement into the camper.

{¶11} Jennifer Baker testified in her defense. Baker testified that she is a 60-year-old widow with a 250-acre farm that she operates alone since her husband's death in 2020. She has not installed any security lighting on her property. Baker's daughter, Stephanie Stewart, lives in a camper on Baker's property. Terry Shanks is Stephanie's boyfriend and has been since approximately 2019. However, Baker testified that Terry Shanks is not welcome in Baker's home. Baker testified that she had been employed as the finance director for Highland County Community Action, but was fired due to this incident.

{¶12} Baker testified that she joined the officers who came to do a wellness check on her daughter. She walked them down to the camper, and the deputies noted that there

was a moped sitting at the end of the camper. Baker testified that the entire wellness check took only a few minutes. Stephanie opened the camper door, told them that Terry Shanks was not there, and that she would not let them into the camper. Baker and the deputies continued to stand outside the camper for about five minutes listening to see if they could hear conversation coming from the camper. After the deputies left, Baker testified that she went back down to the camper and the moped was gone.

{¶13} Baker testified that after that, she went to bed and woke up at 2 a.m. to the sound of a vehicle out in the front of the house revving up its engine. She was able to hear it because she sleeps with her front screen door open. She owns an 870 Remington shotgun and had "seven and a half shot" loaded in the shotgun. Baker identified the empty box of shotgun shells she loaded into the shotgun. Baker testified that the revving engine was of interest to her because, "I figured he [Shanks] was back to either cause more harm to my daughter or whatever he does." She heard the vehicle travel up the road and then turn around and come back. "And whenever I heard him coming back I stepped out the door. And I shot at the vehicle."

{¶14} Baker testified that she fired at the vehicle because, "I believed it was Terry Shanks and he was either back to cause more harm to my daughter * * * or harm to property or to me * * *." Baker testified that on the way back past her house, the vehicle had been travelling such that the passenger side was facing her side of the road and she was approximately 25 to 35 feet away from it and just off her front porch. Baker testified that her intention in firing at the vehicle was, "I just wanted him to stop, I wanted him to go away." Baker testified the truck continued to drive down the road after she shot at it. She testified that she "stood there for a little bit, well I'll [sic] called the sheriff to let them

know what had happened. Because I'm honest like that." When she went back out to the front porch, she set the shotgun down. She testified that it was no longer loaded because "it had two shots in it and that was it."

{¶15} After she placed the call to the sheriff, Baker testified that she got a drink and went back out on the front porch, "Because the truck whenever it stopped it said you better bring more bullets is what he told me." After a short time, the truck came back up the road and fired two shots towards her house. Baker testified that a photograph of her truck showed a broken taillight, which she believed was caused by a shot from the driver when he returned after being shot by her. After that, law enforcement arrived and, on their way, they located the pickup truck driver. Initially, law enforcement told Baker that they had caught Terry Shanks, but later they came back and told her that it was not Terry Shanks driving the truck, it was Wade Page.

{¶16} Baker testified that she knew Wade Page and the last time she had seen him was probably in the summer. She testified that she believed the driver was Terry Shanks because the driver had stopped out in front of the house and revved his engine, which is what Shanks had done in the past. However, she admitted that it was dark and she could not see the driver. She also was not aware whether her daughter Stephanie was still on her property when she fired at the pickup truck. Baker testified that she understood she could have injured somebody firing a shotgun round at the vehicle.

{¶17} On cross examination Baker was asked who she was calling a "Fucking Bitch" on the recorded call to the sheriff's office, and who she was "screaming at and telling to get out of your life?" Baker testified that it was her daughter, but her daughter was not there and Baker was just "screaming in the air." Baker also admitted that Terry

was driving a moped earlier. Baker was asked, "Do you think that it's responsible gun ownership to shoot in the dark at a passing vehicle?" and Baker responded, "No." Baker also admitted that she fired two shots at the pickup truck. Baker testified that, after she shot at the pickup truck, she heard the driver say "you better bring more bullets," but she could not tell if that was Terry Shanks voice because, "I don't know, I'm not familiar with Terry Shanks['] voice." Baker admitted that it could have easily been anyone in the truck. However, she testified that she believed it was Terry Shanks because, although she could not identify the make and model of the truck, she testified that it appeared to be an old pickup truck based on the sound of it. Baker testified that the sound was consistent with Terry Shanks' operation of motor vehicles in the past.

{¶18} The jury found Baker guilty of felonious assault, the second-degree felony count, and not guilty of aggravated felonious assault, the fourth-degree felony count.[1] It found Baker's shotgun subject to forfeiture. The trial court sentenced Baker to a minimum prison term of two years and a maximum term of three years.

## II.  ASSIGNMENTS OF ERROR

{¶19} Baker presents the following assignments of error:

I.      The trial court erred in prohibiting defendant from admitting evidence to meet her burden of production for a self-defense instruction.

II.     Defendant was denied effective assistance of counsel.

## III.  LAW AND ANALYSIS

---

[1] The state moved to dismiss the aggravated felonious assault count and it appears the state's motion was made after jury deliberations commenced. The trial court granted the dismissal of that count, but also accepted the jury's not guilty finding on that count.

### A. Trial Court's Exclusion of Evidence

**{¶20}** Baker contends that the trial court erred when it did not permit her to introduce evidence of the history between herself and her daughter's boyfriend, Terry Shanks. She contends that when she fired shots at the vehicle, she mistakenly believed Shanks was the driver and had come to harm her or her daughter. She argues that because an element of self-defense is a bona fide belief of imminent risk of death or great bodily harm, testimony regarding the history between Shanks and Baker was relevant and instructive to the reasonableness of her fear at the time she fired at the passing vehicle. The state responds that the trial court did not abuse its discretion in excluding evidence of Shanks' and Baker's past dealings because there is no evidence that tends to support that Baker was acting in self-defense when she shot at a vehicle driving on a public roadway away from her house.

### 1. Standard of Review

**{¶21}** A trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court. *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240. Therefore, we confine our inquiry to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in excluding evidence. *Id.*

### 2. Evidence of Baker's History with Shanks

**{¶22}** Baker contends that evidence about her history with Shanks was necessary to allow to her assert a claim of self-defense and the trial court erred when it excluded all evidence of it.

**{¶23}** To merit consideration of the affirmative defense of self-defense, Baker first had "the burden of producing legally sufficient evidence of self-defense to trigger the state's duty to overcome that evidence." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 19. "Similarly to the standard for judging the sufficiency of the state's evidence, if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *Id.* at ¶ 25.

A self-defense claim includes the following elements:

> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. (Brackets sic.)

*Messenger* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). While the burden is not onerous, and may be demonstrated with the state's evidence, a claimant must satisfy this burden and present evidence "that tends to support" a self-defense claim. *State v. Bulger*, 6th Dist. Sandusky No. S-23-001, 2023-Ohio-4004, ¶ 14. There is "no due-process right to a presumption of an affirmative defense such as self-defense" and "there is no explicit presumption of self-defense in R.C. 2901.05(B)(1)." *Messenger* at ¶ 19-20.

**{¶24}** If a defendant produces legally sufficient evidence of self-defense, then the state has a duty to overcome that evidence. R.C. 2901.05(B)(1) provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶25}** Thus, if R.C. 2901.05(B)(1) is triggered then the state is required to disprove self-defense by proving beyond a reasonable doubt that a defendant (1) was at fault in creating the situation giving rise to the affray, or (2) did not have a bona fide belief that he or she was in imminent danger of death or great bodily harm for which the use of deadly force was the only means of escape, or (3) did violate a duty to retreat or avoid the danger. *State v. McCallum,* 10th Dist. Franklin No. 19AP-796, 2021-Ohio-2938, ¶ 37.

**{¶26}** Here, Baker failed to produce legally sufficient evidence of self-defense. The second element of self-defense – that Baker believed she or her daughter were in imminent danger of death or great bodily harm – involves both objective and subjective considerations. *State v. Mitchell*, 2023-Ohio-2604, 222 N.E.3d 156, ¶ 24-25 (1st Dist.). Baker's belief that she was in immediate danger of death or great bodily harm must be objectively reasonable, and she must have an honest belief that she faced such danger. *Id.* Baker testified that she heard a truck's engine revving, went outside, and fired her shotgun at a vehicle passing by on a public roadway. Baker did not see the driver and she was not threatened physically or verbally by the driver prior to her firing at it. The driver was not on her property or driving in her direction as if to run her over, but rather

was driving past and away from her property. Thus, Baker's belief was not objectively reasonable.

{¶27} Additionally Baker failed to meet the subjective standard. Baker testified that she believed the driver was Terry Shanks, but she did not testify that she believed she or her daughter were in imminent danger of death or great bodily harm from Shanks. Rather, she testified that she did not know why Terry Shanks was there. Baker initially testified that she believed Shanks was there for one of two reasons: "he was back to either cause more harm to my daughter or whatever he does." Later Baker testified she did not know if Shanks was back to cause "harm" to her or her daughter or to cause "harm" to her property. Thus, Baker failed to present any evidence that she had an honest subjective belief that she or her daughter were in imminent danger of death or great bodily harm. In sum, Baker was unsure why Shanks was there. Baker also failed to establish that she fired at the pickup as it drove by as her only option to escape harm. To the contrary, she testified she shot at the pickup truck to get him to stop revving his engine and leave, "I just wanted him to stop, I wanted him to go away."

{¶28} The "mistake of fact" she claims occurred does not excuse her behavior because even if Shanks had been the driver, she was not justified in shooting at the vehicle. In other words, Baker would be guilty of felonious assault even if the situation were as she believed.

> Ignorance or mistake of fact is a defense if it negates a mental state required to establish an element of a crime, except that if the defendant would be guilty of a crime under the facts as he believed them, then he may be convicted of that offense. * * * LaFave, Criminal Law (2d Ed.1986) 405, Section 5.1. See, generally, 25 Ohio Jurisprudence 3d (1981) 167, Criminal Law, Section 62.

*State v. Pecora,* 87 Ohio App.3d 687, 690, 622 N.E.2d 1142, 1144 (9th Dist.1993). Here Baker would be guilty of felonious assault even if the driver had been Terry Shanks.

**{¶29}** Baker failed to produce legally sufficient evidence that she was acting in self-defense. Because Baker was not entitled to assert the affirmative defense of self-defense and because the victim here was not Terry Shanks, evidence of Baker's and Shanks' history was irrelevant. *See State v. Fisk*, 2d Dist. Montgomery No. 28798, 2021-Ohio-1973, ¶ 30-34, *rev'd on other grounds*, 171 Ohio St.3d 479, 2022-Ohio-4435, 218 N.E.3d 852 (Evid.R. 404(A)(2) permits a defendant asserting self-defense to testify about specific instances of the victim's prior violent or aggressive conduct which was known to defendant to show defendant's state of mind. However, where the evidence at trial negated defendant's theory of self-defense, the issue of defendant's state of mind was irrelevant and the trial court's exclusion of evidence of the victim's past aggressive conduct was harmless error).

**{¶30}** The trial court did not abuse its discretion when it excluded evidence of the past conduct of Terry Shanks. Baker was not acting in self-defense thus her state of mind was irrelevant. Moreover, the victim here was Wade Page, not Terry Shanks. We overrule Baker's first assignment or error.

### B.  Ineffective Assistance of Counsel

**{¶31}** Baker contends her trial counsel was ineffective for failing to proffer evidence about her past incidents with Shanks because it would provide context and support a self-defense claim. She argues that, although her trial counsel requested to proffer this evidence at the close of defense's case, the trial court denied it but stated that

it could be made following jury deliberations. However, her attorney did not proffer the evidence following jury deliberations.

{¶32} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence"). To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85.   To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome."  *Strickland*, 466 U.S. at 694.

1. Failure to Proffer Evidence of Baker's and Shanks' History

{¶33}  Here, as the state points out, the outcome of the trial would not have differed had Baker's attorney proffered the evidence at the close of the jury's deliberations because the evidence would not have been before the jury. Thus, her counsel's failure to

do so did not affect the outcome of the proceeding. Moreover, as we discussed in evaluating her first assignment of error, even if Baker's attorney had proffered evidence of Baker and Shank's allegedly violent history, the trial court properly excluded that evidence. Therefore the evidence was properly excluded and there is no reasonable probability that the proffered evidence would have changed the outcome of the proceedings. Baker has failed to establish ineffective assistance of counsel on this basis.[2]

### 2. Failure to Make a Crim.R. 29 Motion for Acquittal

**{¶34}** Baker also contends her trial counsel was deficient for failing to make a Crim.R. 29 motion for acquittal. She argues that there was no proof that she knowingly caused or attempted to cause serious physical harm. She argues she only shot "birdshot" at a distance of 30 feet, which was the same ammunition she used to shoot and kill game around the farm. Furthermore, she argues that there was no evidence any of the ammunition that she shot landed inside the passenger compartment of the vehicle.

**{¶35}** The state argues that Baker misstates the law, the state is not required to prove that the victim suffered serious physical harm. The state is required to prove that Baker attempted to cause physical harm with a deadly weapon. A shot gun is a deadly weapon and Baker fired at least two shots of ammunition from the shotgun at the vehicle. The state argues this is strong circumstantial evidence that Baker was attempting to cause physical harm with a deadly weapon. The state argues that Baker's attorney could easily predict that such a motion would be overruled and therefore was not required to make it.

---

[2] The record includes a document identified as "Defendant's Exhibit C – Proffer of Testimony" and contains a chronological history of Baker and Shanks' contentious history. However, there is no reference to this document in the trial transcript, therefore we are unable to determine if this document was considered by the trial court.

**{¶36}** "Counsel's failure to make a Crim.R. 29 motion for acquittal is not ineffective assistance of counsel where such a motion would have been fruitless." *State v. Scott*, 6th Dist. Sandusky No. S-02-026, 2003-Ohio-2797, ¶ 20. "While it is customary for defense counsel to make a motion for acquittal as a matter of course to test the sufficiency of the state's evidence, the failure to follow that course of action did not mean the performance of appellant's trial counsel fell below a reasonable standard of representation." *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 36, quoting *State v. Reed,* 6th Dist. Wood No. WD-97-031, 1998 WL 102135, 3 (Feb. 27, 1998).

**{¶37}** Under Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, the same standard of review applies to Crim.R. 29 motions as is used in reviewing the sufficiency of the evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶38}** R.C. 2903.11(A)(2) prohibits felonious assault and provides: "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." A shotgun is a deadly weapon under R.C. 2923.11(A) and (B)(1), which defines deadly weapons. The evidence shows that Baker fired at least two shots at the

vehicle, one which shattered the passenger-side window and sprayed glass over the driver.

**{¶39}** R.C. 2901.22(B) defines the mental state of "knowingly" for purposes of criminal culpability:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

*See also State v. Barry,* 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 23.

**{¶40}** Sufficient evidence supports Baker's conviction. Baker knowingly fired a shotgun twice at a vehicle travelling on the public roadway in front of her house. Even if we assume her sole purpose was to "scare the driver" as she argues in her brief, her "purpose" is not relevant. She was aware that under such circumstances she probably will cause physical harm to the driver. When we construe this evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. We find that trial counsel was not ineffective when he did not make a Crim.R. 29 motion because it would have been futile.

**{¶41}** We overrule Baker's second assignment of error.

## V. CONCLUSION

**{¶42}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
      Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**